MARATHON PIPELINE COMPANY and
Platte Pipeline Company, Plaintiffs,

v.

MARYLAND CASUALTY COMPANY,
Defendant.

No. 97–CV–1037–J, 97–CV–1039–J.

United States District Court,
D. Wyoming.

May 8, 1998.

---

Richard E. Day, Ann M. Rochelle, Williams Porter Day & Neville, Casper, WY, for Marathon Pipe Line Co.

J. Kent Rutledge, Stephen Andrew Fermelia, Lathrop & Rutledge, Cheyenne, WY, James C. Nielsen, Wright Robinson Osthimer & Tatum, San Francisco, CA, for Maryland Cas. Co.

Judith A. Studer, Schwartz Bon Walker & Studer, Casper, WY, for Platte Pipeline Co.

## ORDER GRANTING DEFENDANT MARYLAND'S MOTION FOR SUMMARY JUDGMENT ON COVERAGE ISSUE

ALAN B. JOHNSON, Chief Judge.

This matter came before the court on October 31, 1997, for hearing on Defendant's motion for summary judgment. The court has considered the entire file and is fully advised.

Platte Pipeline Company (Platte), the owner of an energy pipeline and related properties, uses Marathon Oil Company (Marathon) to manage its operations in Casper, Wyoming. In 1994, Marathon entered into a service contract with Steel Structures, Inc. (SSI). The purpose of the contract was not to specify actual work SSI would perform for Marathon, but rather to establish a contractual relationship between the two companies for any work SSI might perform at Marathon's request. One of the terms of the contract required SSI to have insurance that would indemnify Platte or Marathon for any liability arising from SSI's work performed on Platte's and Marathon's behalf.

During the summer of 1996, Marathon asked SSI to hire Justis Berg, a high school student looking for seasonal employment between his junior and senior year. Under this scheme, Mr. Berg would appear on SSI's employment books, but Marathon would reimburse SSI for all employment costs under the service contract, including wages and workers compensation premiums. However, Marathon would be responsible for Berg's training and for any equipment he would operate. All of Berg's work would be under Marathon's supervision.

On June 28, 1996, Justis Berg was severely injured when the mowing tractor he was driving overturned. As a result of the accident, Berg eventually lost a leg.

On the day of the accident, defendant Maryland Casualty Co. (Maryland) insured SSI. This insurance included a Commercial General Liability (CGL) policy augmented with a Supplemental Employer's Liability coverage. In addition to its own coverage under the policy, SSI had asked for and had received endorsements, which included both Platte and Marathon as additional insureds.

Following the accident, Berg submitted a claim to Maryland that was denied by letter dated October 1, 1996. Denial was based on the policy's "workers' compensation" exclusion and the general exclusion of coverage to permanent employees. This denial, however, did not address whether coverage was available under the employer's supplemental insurance policy carried by SSI. Also, the denial was silent on the issue of whether claimant Berg was a temporary worker hired on a seasonal basis, which is an exception to the policy's permanent employee exclusion.

In March of 1997, Berg filed suit against Platte and Marathon, Case No. 97–CV–1013–J. On April 14, Platte and Marathon notified Maryland of the Berg lawsuit and asked it to defend Platte and Marathon as the "additional insured" of SSI's CGL policy. Under Wyoming law, an insured has 45 days to accept or deny coverage. Wyo. Stat. § 26–15–123. Maryland did not respond to Platte's and Marathon's repeated request over several months to provide a defense. On July 11, 1997, Platte and Marathon filed this action seeking a declaration that the SSI policy provided coverage for Berg's claims against them.

On August 15, 1997, Maryland informed Platte and Marathon that it agreed to defend them in the underlying Berg action, but only under a reservation of rights. The next month, the Berg suit was settled prior to the commencement of trial. It settled for an undisclosed amount without Maryland accepting any liability or paying any amount under its policy.

In this separate action, Platte and Marathon continue to seek coverage and reim-

bursement from Maryland under their rights as endorsed additional insureds. They also allege Maryland acted in bad faith. Finally, having obtained an assignment of rights from SSI, Platte and Marathon seek coverage under the insurance contract standing in the shoes of the primary insured.

Maryland moves for summary judgment. Although this motion is titled "Motion for Summary Judgment," the present motion is for partial summary judgment relating to only the insurance-coverage issues. These contract claims are found at sections II and III of the Amended Complaint. The present motion does not cover the alleged breach of the duty to defend.

The standard for the grant or denial of summary judgment is well known:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. If the movant bears the burden of showing the absence of a genuine issue of material fact, the non-movant may not rest on its pleadings but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.

*Mesa Oil, Inc. v. Ins. Co. of North America,* 123 F.3d 1333, 1336 (10 Cir.1997).

## I. COVERAGE FOR THE ADDITIONAL INSURED UNDER THE POLICY IS NOT LIMITED BY AN OBSCURE REFERENCE TO A BUSINESS OR WORK DESCRIPTION.

■ Maryland claims that Platte and Marathon are only entitled to coverage under the CGL policy to the extent that SSI was engaged in the work of erecting buildings or remodeling old buildings since these words were expressed on the endorsement pages. Since Berg was mowing a lawn and not constructing a building, Maryland argues that Platte and Marathon cannot recover.

To support its contention, Maryland points to the endorsement pages that add Platte and Marathon as additional insureds. There is one endorsement page for Platte and one endorsement page for Marathon. The purpose of the separate endorsement pages is to add a new insured to the policy and re-define 'Who Is An Insured' under the policy. This definition clearly states that additional insured is only covered for liability arising out of the policyholder's work for that additional insured.

The endorsement pages (schedule (FORM B)) also include a section that states the name of the person or organization to which the endorsement pertains. In the case of Platte, its name and address and contact person are listed under this section, immediately followed by a reference which states: "PROJECT: ERECTING BUILDINGS & REMODELING OLD BUILDINGS." On Marathon's endorsement schedule, following its name and address, is written: "RE: BUILDING ERECTION." Here the word 'project' is omitted entirely.

While Maryland argues that the mere mention of these work descriptions limits the policy, it ignores the fact that a plain reading of the policy does not reveal any other reference to support its interpretation.

In *Howton v. Mid–Century Ins. Co.,* 819 F.Supp. 1010 (D.Wyo.1993), the court noted that Wyoming law requires interpretation of insurance policies according to five basic tenets.

> These tenets are (1) the court should give words their "common and ordinary meaning"; (2) the court should determine what parties reasonably intend from policy's language; (3) the language of the policy should not be so strictly construed as to "thwart the general object of the insurance"; (4) the court should enforce the policy according to its terms absent an ambiguity; and (5) where the court finds ambiguity, the policy should be construed liberally in favor of the insured; if the policy is "fairly susceptible" of two constructions, the court should adopt the one which favors the insured.

*Id.* at 1011 (quoting *Farmers Ins. Exch. v. District Court of the Ninth Judicial Dist.,* 844 P.2d 1099, 1101–02 (Wyo.1993)).

For Maryland to prevail in its interpretation, at the very least the endorsement should have included language stating that the policy coverage was limited to a specific project. This could have been clearly stated either in the endorsement or the policy language itself, including the definition section which does not define "project." When the insurer tacks onto the name and address an obscure reference to the primary insured's business description, such a reference does not adequately inform an additional insured of the potential limitation. Therefore, it is not a policy limitation.

■ The language of an insurance policy is to be construed in accordance with the principle that the test is not what the insurer intended its words to mean but what a reasonable person in the position of the insured would have understood them to mean. *Wilson v. Hawkeye Cas. Co.*, 67 Wyo. 141, 215 P.2d 867, at 873–74 (Wyo.1950). If Maryland wished the policy to be so limited it was well within its power to do so with clear and specific language.

Also, Maryland's argument is diminished by the fact that endorsement pages, which serve the identical purpose of indemnifying Platte and Marathon, actually use different language. On Marathon's endorsement page, the word "project" is not used at all, and instead SSI's type of work is merely referenced by "RE:."

In the final analysis, Maryland cannot ignore that these references appear in the "name or organization" column and not at some separate location in the endorsement or policy that references the effect or purpose of these words to which a limitation would attach. It is not that an insurer cannot limit coverage to a specific work project, but that Maryland failed to do so in the policy at issue in this case.

This court concludes that the business descriptions at issue do not by themselves act as a policy limitation upon the insured in the absence of a greater explanation resting elsewhere in the policy.

## II. ADDITIONAL INSUREDS PLATTE AND MARATHON ARE ENTITLED TO COVERAGE UNDER THE POLICY AS "NAMED INSUREDS."

■ While the policy contains an express exclusion as to coverage for employees of the insured, there is an exception for "temporary" employees that are furnished to the insured as seasonal workers. Justis Berg was a high school student who was hired for summer work. Maryland does not dispute that Berg's employment falls within the definition of a temporary worker. However, Maryland does dispute whether Marathon can avail itself of this exception to the employee exclusion because of the express definition of a temporary worker, which reads:

"Temporary worker" means a person who is furnished to *you* to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Def.'s Ex. 4, p. 93, (underlined emphasis added).

Maryland argues that the exception's use of the word "you" should not apply to Marathon because it is only an "additional insured" and not a "Named Insured." According to Maryland, the CGL policy distinguishes between SSI as a Named Insured and Marathon and Platte who are only "additional insured." The justification for Maryland's contention comes from the wording at the second paragraph of the CGL policy, which reads:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

*Id.* at 82.

Maryland argues that Marathon and Platte are not "Named Insureds" and therefore cannot be considered "you." As such, since the temporary worker exception to the employee exclusion uses the term "you," Maryland believes it does not apply to additional insureds.

Unfortunately for Maryland, the policy does not define "Named Insured," in the policy either in Section V under the definitions or elsewhere. In addition, "Named Insured" is not limited to those parties singled out in the declarations page, but may also be "...any other person or organization qualifying as a named insured under this policy." *Id.* at 82.

After evaluating introductory language in a CGL policy identical to the policy in this case, the court in *Prisco Serena Sturm Architects v. Liberty Mutual,* held that the "additional insured" were also "Named Insured." *Id.,* 126 F.3d 886 (7th Cir.1997). The *Prisco* court wrote:

> The word "your" in the Liberty [CGL Policy] does not refer only to Axelrod [The Named Insured in the Declarations page], according to the introductory paragraph quoted above. It can also include "any other person or organization qualifying as a Named Insured under the policy," such as PSSA [the additional insured under an endorsement].

*Id.* at 892

The *Prisco* court added:

> As discussed above, the policy states right at the beginning that "the words 'you' and 'your' refer to the Named Insured shown in the declarations and any other person or organization qualifying as a named insured under this policy.... Therefore, the entire CGL policy must apply to each of them just as it applies to Axelrod [the primary insured].... Since Montessori is an additional insured under the policy, it is a 'you' for purposes of the exclusion as well as for the rest of the CGL policy."

*Id.* at 893.

Under a plain reading of the policies, Marathon and Platte are Named Insureds as well as additional insureds so that anywhere the CGL policy refers to "you" it is referring to them. This interpretation is fortified by *Wyner v. North American Specialty Ins. Co.,* where the court denied coverage to a landlord because the CGL policy made the "additional insured" a "Named Insured," as well. *Id.* 78 F.3d 752 (1st Cir.1996). The *Wyner* Court wrote:

[T]he Landlords point to the CGL portion's provision that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy"; from this provision the Landlords conclude that they are not covered by the term "you" under this provision. Thus, they contend ambiguity results. We disagree. Not only does the Landlord's argument hinge on the "Named Insured" versus "ADDITIONAL INSURED" distinction that we have already rejected, but in fact, the subsequent sentence in the CGL policy states that "[t]he words 'we,' 'use' and 'our' refer to the company providing this insurance." Thus, the ordinary and common reading of the language in this context would be to find that "you" and "your" were defined as the Named Insured not to draw a distinction between Wursthaus (the primary insured) and the Landlords (the additional insured), but between Wursthaus and NASAIC (the insurer).

*Id.* at 757.

Finally, this argument over whether Marathon and Platte are both "Named Insureds" and "additional insureds" must be considered in light of the fact that the policy contains a "Separation of Insureds" clause in Section IV, which reads:

> 7. Separation of Insureds
>
> Except with respect to the limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> As if each Named Insured were the only Named Insured: and
>
> Separately to each insured against whom claim is made or "suit" is brought.

Def.'s Ex 4, at 90.

Consistent with this court's reading of the policy, this provision alludes to the existence of a "first Named Insured" so as to distinguish between other Named Insured, which include those who have also been designated as "additional insured."

## III. ADDITIONAL INSUREDS ARE ONLY ENTITLED TO COVERAGE TO THE EXTENT THAT LIABILITY AROSE FROM PRIMARY INSURED'S ACTIVITY.

██] Having established that policy endorsements did not limit the coverage to a specific activity, and having shown that Marathon and Platte were both Named Insureds under the policy, this court nonetheless finds that Marathon and Platte are not entitled to coverage.

While Marathon and Platte can be considered to be Named Insureds, standing in as good a position under the policy as SSI, there still remains a major distinction between the primary insured and the additional insureds. This distinction rests upon the fact that some event or action on the part of the primary insured must first trigger an additional insured's coverage. The endorsements clearly state the additional insured parties are included under the policy, "but only with respect to the liability arising out of" the primary insured's activities. Def.'s Ex.4 at 68 and 80.

If Justis Berg were SSI's employee, then this court could find that Marathon and Platte have coverage under Maryland's CGL policy. The liability of Marathon and Platte would rise out of SSI's activity on behalf of the insureds. The problem here is that in the underlying action between Berg and Marathon/Platte, Marathon not only accepted that Berg was its employee, but Marathon actively argued for that very proposition. (See this court's order in Case No. 97–CV–1013–J, entered September 18, 1997).

Marathon made the decision to employ Berg. Marathon was responsible for Berg's work, safety training, and supervision. Marathon directed Berg's work. The equipment Berg operated at the time of his accident belonged to Marathon. The only connection that SSI had with Justis Berg was administrative, the duties of which were carried out competently and without giving rise to liability under the policy.

This decision would be quite different if Berg were SSI's employee. In that case, the work and activity of the primary insured would have given rise to liability that Marathon and Platte could then recover from under the CGL policy as Named Insured. But having adjudicated the fact that Berg's employer was Marathon, the policy language conditioning coverage for the additional insured remains unsatisfied. The initial condition that brings Marathon and Platte under the policy is unmet. The trigger was never pulled. Therefore there is no coverage.

## IV CONCLUSION AND ORDER

Based upon the foregoing, it is therefore

ORDERED that defendant Maryland Casualty Company's Motion for Summary Judgment is **GRANTED.** It is further

ORDERED that judgment will be granted in favor of defendant Maryland Casualty Company and against plaintiff Marathon Pipe Line Company and plaintiff Platte Pipe Line Company on plaintiffs' claims for declaratory judgment that there is coverage for Justis Berg's claims against Marathon and Platte in Case No. 97–CV–1013–J, under Policy No. EPA 0832835. It is further

ORDERED that judgment will be entered in favor of defendant Maryland Casualty Company and against plaintiff Marathon Pipe Line Company and plaintiff Platte Pipe Line Company for breach of contract based upon the failure to provide coverage for Justis Berg's claims made in Case No. 97–CV–1013–J and the failure to tender the limits of Policy No. EPA 08323835 in Case No. 97–CV–1013–J and the failure to indemnify for the amounts paid in settlement of Case No. 97–CV–1013–J.

The court will enter a judgment in accordance with this order at the time it enters a judgment adjudicating all the claims and the rights and liabilities of all the parties.